**USACO COAL COMPANY, et al.,**
**Plaintiffs-Appellees,**

v.

**CARBOMIN ENERGY, INC., et al.,**
**Defendants-Appellants.**

No. 82–5126.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 6, 1982.
Decided Sept. 27, 1982.

Bert T. Combs, M. Stephen Pitt, Sheryl G. Snyder, Wyatt, Tarrant & Combs, Louisville, Ky., for defendants-appellants.

Richard A. Getty, James R. Cox, Lisabeth Hughes, Greenbaurm Doll & McDonald, Louisville, Ky., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, JONES, Circuit Judge, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Federal question jurisdiction in this private civil action is founded on section 1964(c) of the Racketeer Influenced and Corrupt Organizations Statute (RICO), 18 U.S.C. §§ 1961 et seq.[1] Count one of the complaint alleges that defendants have conspired, and have engaged, in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d) with the result that plaintiffs have been defrauded of approximately $8,300,000. In addition, counts two through four of the complaint assert claims under state law founded upon the district

---

1. The defendants have not been subjected to any criminal proceedings under RICO for the acts complained of by the plaintiffs. We are of the opinion that 18 U.S.C. § 1964(c) creates a private right of action for parties injured by conduct that violates 18 U.S.C. § 1962 without any requirement of a prior criminal conviction for that conduct.

We are unaware of any decision by a Court of Appeals on the question whether a criminal conviction under 18 U.S.C. § 1963 is a condition precedent to a private civil action under § 1964(c). *United States v. Cappetto*, 502 F.2d 1351 (7th Cir. 1974), answers in the affirmative the analogous question whether the United States may pursue civil injunctive remedies provided by § 1964(a) in the absence of a prior criminal conviction.

A number of district courts have specifically rejected the contention that a civil action under § 1964(c) requires a prior conviction under § 1963. *State Farm Fire & Cas. Co. v. Estate of Caton*, 540 F.Supp. 673, 675 (N.D. Ind. 1982); *Glusband v. Benjamin*, 530 F.Supp. 240, 241 (S.D.N.Y. 1981); *Heinold Commodities, Inc., v. McCarty*, 513 F.Supp. 311, 314 (N.D. Ill. 1979); *Parnes v. Heinold Commodities*, 487 F.Supp. 645, 647 (N.D. Ill. 1980); *Farmers Bank of State of Del. v. Bell Mtg. Corp.*, 452 F.Supp. 1278, 1280 (D. Del. 1978). We agree with these decisions. We find nothing in the plain lan-

guage of RICO to suggest that civil liability under § 1964(c) is limited only to those already convicted or charged with criminal racketeering activity. Section 1964(c) states that an action for damages may be maintained by any person injured in his business or property by reason of a violation of § 1962. *Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982). Section 1962 merely describes acts that are "unlawful" under RICO. Section 1963 provides that violations of § 1962 are criminal, just as § 1964(c) provides that violations of § 1962 create a private right of action for damages. If Congress had intended to limit liability under § 1964(c) only to those convicted of or charged with RICO crimes, it would have done so within § 1964(c) by referring to § 1963 or by otherwise specifically indicating that a conviction under § 1963 is a basis for civil damages. By referring in § 1964(c) only to the unlawful acts of § 1962, Congress has created a civil remedy that is independent of criminal proceedings under § 1963. We believe this literal reading of RICO is consistent with the approach of *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and the Supreme Court's recognition in that case that Congress intended that RICO be liberally construed to effectuate its remedial purposes.

court's pendent jurisdiction. In count two plaintiffs allege a breach of fiduciary duties, in count three they allege common law fraud, and in count four breach of contract.

Presently before this Court is defendants' appeal from a preliminary injunction restraining the defendants from "directly or indirectly transferring, selling, assigning, dissipating, concealing, encumbering, impairing or otherwise disposing of in any manner [the corporate defendants'] assets, choses in action, or other property, real or personal." After seventeen days of hearings the district court stated that this order was appropriate to protect the interests of the "only completely innocent parties in the proceedings," German citizens who had purchased shares in a plaintiff corporation, against the probability that the defendants would transfer their only assets within the United States to foreign accounts before it could be finally determined whether the innocent shareholders have a rightful claim to defendants' assets in this country.

The defendants' briefs and arguments have largely focused on the question whether the district court had the power to sequester the defendants' assets in order to secure a possible judgment for treble damages under 18 U.S.C. § 1964(c). Federal Rule of Civil Procedure 64 declares that all remedies providing for seizure of person or property *for the purpose of securing satisfaction of a judgment ultimately to be rendered* are to be governed by the law of the state in which the district court is held, subject to any existing applicable federal statute. The district court in the present case did not apply state law, and the defendants have vigorously argued on appeal that RICO is not a "federal statute" under Fed. R. Civ. Pro. 64(1) that authorizes prejudgment sequestration for the satisfaction of a civil damage claim under 18 U.S.C. § 1964(c).

Unfortunately, these arguments are largely superfluous because they fail to recognize that the district court in the present case did not issue the preliminary injunction for the purpose of securing a potential tre-

ble damage award under RICO. Quite clearly, the district court issued the injunction upon finding a substantial likelihood that plaintiffs would ultimately prevail on a claim for restitution based on the allegation of a breach of fiduciary duty contained in count two of the complaint.

After a lengthy recitation of facts regarding an investment scheme in which both plaintiff Rossbach and the defendants participated, the district court concluded that the only "completely innocent" parties involved in the proceedings are persons who bought stock in one of the plaintiff companies. The court then concluded that:

> It is the interest of these innocent stockholders and purchasers which must be protected, and the Court must now consider whether, in light of all the facts previously recited, it has the power to issue injunctive relief which would freeze the assets held by [defendant] Schierack's entities in the United States ... in an effort to protect these stockholders.

With this question and its findings of fact in mind, the district court applied the principles set forth by the Supreme Court in *McCandless v. Furlaud,* 296 U.S. 140, 56 S.Ct. 41, 8 L.Ed. 121 (1935). In *McCandless* the Supreme Court stated that the promoter of a corporation has a fiduciary duty to the corporation promoted, and that the promoter is chargeable as a trustee for breach of that duty when the promoter deals with the corporation in a manner that is unconscionable, oppressive, or in violation of statute. *Id.* at 156, 56 S.Ct. at 45. The Court further held that breaches of the fiduciary duty make promoters accountable "for everything that comes to them as a result of the conspiracy in excess of consideration furnished on their [the promoters'] side", and that, "Everything of profit arising out of the abused relation must now be yielded up." *Id.* at 164, 56 S.Ct. at 49.

The statement of a promoter's fiduciary duty and the remedy for its breach found in *McCandless,* which was decided prior to *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), appears to be a statement of the federal common law

at that time. However, we are confident that the *McCandless* principles concerning the duty of promoters accurately state the law of Kentucky, the jurisdiction whose law applies to the pendent state claims in the present case. In *Datillo v. Roaten Creek Oil Co.*, 222 Ky. 378, 383, 300 S.W. 854 (Ky. 1927), the highest court of Kentucky noted that a promoter occupies a fiduciary relationship to the corporation that he promotes and that equity will not tolerate unconscionable conduct by the promoter that affects the value of the stock purchased by those who are ignorant of the unfair manipulation or fraud perpetrated by the promoter. *Accord, McClure v. Young*, 396 S.W.2d 48, 51 (Ky. App. 1965).

One effect of holding that a promoter has a fiduciary relationship to the corporation promoted is to permit the imposition of a constructive trust on any private benefit obtained by the promoter while acting in the fiduciary capacity. *McCandless, supra* at 164, 56 S.Ct. at 49; G. Bogert, Trusts & Trustees § 16 (2d ed. 1965). Where the fiduciary uses funds obtained in breach of the fiduciary duty to acquire property, the fiduciary holds that property as a constructive trustee and has a duty to account to the beneficiary. *See, e.g., Burgess v. Williamson*, 506 F.2d 870, 876 (5th Cir. 1975). Thus, breach of the fiduciary duty entitles the principal to recover in restitution any property obtained by the fiduciary as a result of the breach.

In the present case, the district court found that defendant Schierack was a prime promoter and mover of the plaintiff corporations. The court also found that the plaintiffs have a substantial probability of success in showing that Schierack fraudulently obtained more than one million dollars from the plaintiffs₁ in excess of the consideration supplied by Schierack, and that Schierack diverted these funds to his personal use or to the use of the defendant companies with which he was closely associated. The district court concluded that

plaintiffs are likely to recover this amount as restitution under the fiduciary duty principles of *McCandless*. While recognizing that plaintiff Rossbach's complicity and acquiescence in Schierack's actions contributed to the harm suffered by innocent shareholders of one of the plaintiff companies, the district court concluded that it was appropriate to freeze the corporate defendants' assets for the protection of the innocent stockholders' rights to restitution.[2] In reaching this conclusion the court found a high probability that Schierack would transfer the only assets of the defendants located in the United States out of the country before the rights of the shareholders to those assets could be finally determined.

It is entirely clear that the district court issued the injunction freezing defendants' assets in order to protect the rights of the plaintiff corporations and their shareholders to restitution of funds obtained by Schierack in breach of his promoter's fiduciary duty. The injunction was not issued in order to secure a RICO treble damages award that might ultimately result from count one of the complaint, but rather was issued to protect rights to reach the defendants' property as a result of the allegation of breach of fiduciary duty contained in count two of the complaint. Consequently, defendants' arguments based on *DeBeers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945) and Fed. R. Civ. Pro. 64 concerning the court's power to sequester assets as security for a potential damage award are inapposite. The injunction here preserves assets for which the defendants may be accountable under a constructive trust.

The power of the district court to preserve a fund or property which may be the subject of a final decree is well established. *DeBeers Consol. Mines v. United States, supra* at 220, 65 S.Ct. at 1134, *citing as an example, Deckert v. Independence Shares Corp.*, 311 U.S. 282, 64 S.Ct. 229, 85

---

2. While the innocent shareholders are not named parties in the present litigation, their interests must be presumed to be represented by the corporation of which they are shareholders being a party plaintiff.

L.Ed. 189 (1940). We believe this rule is applicable in the present case where the district court found that the defendants' property was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs. As the Supreme Court stated in *DeBeers, supra* at 220, 65 S.Ct. at 1134, "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." In *DeBeers* an injunction was held not to grant relief "of the same character" which might be granted finally because the injunction dealt "with property which in no circumstances can be dealt with in any final injunction that may be entered", and thus only served to secure a potential money judgment. *Id.* By way of contrast, in the present case the property subject to the injunction may well be dealt with by a final decree in equity requiring an accounting by the defendants as constructive trustees for the plaintiffs. We hold that on the facts found by the district court, which are undisputed in this appeal, the district court had the power to issue an injunction preserving the defendants' property pending a final determination of the questions raised by the complaint.

■ Having decided that the district court had the power to issue the preliminary injunction that is the subject of this appeal, we must determine whether that power was properly exercised in the present case. The granting or denial of a preliminary injunction is committed to the sound discretion of the trial court. *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). In determining on appeal whether the district court abused that discretion,

> ... we must consider whether the plaintiffs have shown a strong likelihood of success on the merits; whether the plaintiffs have shown irreparable injury; whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies.

*Adams v. Federal Express Corp.*, 547 F.2d 319, 323 (6th Cir. 1976), *citing, North Avondale Neighborhood Ass'n v. Cincinnati Metropolitan Housing Authority*, 464 F.2d 486 (6th Cir. 1972). Of course, our review of these four issues is limited to whether the district court abused its discretion in granting the preliminary injunction. *Mason County, supra* 563 F.2d at 261.

### Likelihood of Success

■ In the present case the district court found that defendant Schierack was the prime promoter and mover in the plan that induced shareholders to invest in one of the plaintiff corporations. The court also found that Schierack cleverly used corporate devices to further his own interests, and that the assets of the defendant corporations in the United States had been obtained as a part of the overall scheme perpetrated by Schierack. Upon these facts we cannot say that the district court abused its discretion in concluding that the plaintiffs are likely to succeed in a claim for restitution and an accounting as the result of a breach of Schierack's fiduciary duty to the plaintiffs.

### Irreparable Harm

The district court observed that defendant Schierack has no ties to the United States except the property and assets held by the defendant companies, companies that he owns or controls. In light of this fact and the record of Schierack's previous questionable dealings in matters connected to the present lawsuit, the district court found it probable that Schierack could "easily dispose" of the defendants' holdings and could transfer any proceeds to foreign enterprises. It cannot be doubted that plaintiffs' rights to restitution and an accounting would be irreparably harmed in the event Schierack was successful in removing defendants' assets from the United States.

Defendants have argued that because plaintiffs have adequate remedies under Kentucky law that would prevent dissipation of the defendants' assets, the district court abused its discretion in issuing the preliminary injunction. Defendants contend that Kentucky's prejudgment attach-

ment statute, Ky. Rev. Stat. Ann. § 425.301 (Baldwin), together with its *lis pendens* statute, Ky. Rev. Stat. Ann. § 382.440 (Baldwin), provide the plaintiffs with all the protection they require. In its opinion the district court noted this argument, but rejected it without explanation.

Defendants' contention might be more persuasive if the injunction sought to secure a potential damages award or even if it sought only to preserve defendants' assets pending a final determination of rights. An "adequate remedy at law" is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction. *Local Union 499 of Int. Bro. of Elec. Wkrs. v. Iowa Power & Light Co.,* 224 F.Supp. 731, 738 (S.D. Iowa 1964). The injunction issued in the present case is quite broad in scope, prohibiting not only the transfer or dissipation of personal and real property, but also mineral properties and mineral rights held by the defendants. Furthermore, the injunction prohibits defendants from altering, concealing or disposing in any manner of the financial records and other documents concerning the defendants' property. The breadth of the injunction evidences the serious concern of the district court, being thoroughly familiar with the record of defendants' past questionable transactions, that defendant Schierack would be able to dispose of defendants' holdings in the United States.

Neither the briefs and arguments of the defendants nor our own review of the record on appeal has shown us that Kentucky's attachment and *lis pendens* statutes can provide plaintiffs with adequate protection against the probability of continued disreputable conduct that would result in the dissipation and concealment of assets that the district court found to be likely. The *lis pendens* statute applies only to real property. It would not protect plaintiffs' rights to other assets or to an accounting for any profits derived by defendants through the sale of any property that may be subject to a constructive trust. In all probability the *lis pendens* statute does not reach mineral

properties that are severed from the land and sold. *See Roberts v. Cardwell,* 154 Ky. 483, 157 S.W. 711 (Ky.1913), for a discussion of the pre-statutory law of *lis pendens* in Kentucky. The operation of the attachment statute on the mineral properties is also subject to question.

More important to the question whether the attachment and *lis pendens* statutes offer adequate relief is that neither addresses the district court's concern that defendants may tamper with financial statements and other records. This concern reflects the fact that the evidence necessary to determine what accounting defendants may be required to make for property or profits obtained as a result of breach of fiduciary duties is in the hands of the defendants. At this point in the litigation it is unlikely that plaintiffs can accurately determine the holdings of defendants that are subject to their equitable claims. Because neither statute answers the court's concern that defendants may successfully conceal their assets and remove them from this country, we cannot say that the failure to require the plaintiffs to pursue legal remedies was an abuse of discretion.

### Balancing of Harms and the Public Interest

The opinion of the district court specifically notes the necessity of weighing the potential harm to the defendants against the need to protect the plaintiffs' rights. The harm that the district court sought to prevent by means of the injunction was the dissipation and concealment of defendants' assets that would render the litigation meaningless. The order preventing such actions specifically accommodates the legitimate business concerns of defendants by providing that defendants "shall in no way be prohibited from conducting normal, day-to-day business activities, and the payment of trade payables not in excess of $5,000 each." We find no abuse of discretion in this accommodation of the competing interests involved. Furthermore, on the record before us we conclude that the public interest is no way disserved by the order prohibiting defendants from dissipating and

concealing assets until the plaintiffs' equitable claims are resolved.

We note defendants' arguments that equitable relief should be barred by plaintiff Rossbach's complicity in the fraudulent activities and the defendants' argument that the security deposit required of the plaintiffs is inadequate. Both of these matters are committed to the sound discretion of the district court. As this Court explained in *Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.,* 95 F.2d 978, 983 (6th Cir. 1937), the "clean hands" doctrine does not absolutely bar a "culpable" plaintiff from equitable relief, for if the defendant's conduct has been more unconscionable than that of the plaintiff the rule may be relaxed. In the present case there was evidence that permitted the district court to conclude that equity demanded that the injunction issue even while recognizing the questionable conduct of plaintiff Rossbach. Furthermore, the court recognized that the rights of innocent shareholders are implicated in the present action by the fact that the corporation in which they have invested is a plaintiff.

Finally, under Fed. R. Civ. Pro. 65(c) the amount of security given by an applicant for an injunction is a matter for the discretion of the trial court, which may in the exercise of that discretion even require no security at all. *Urbain v. Knapp Brothers Manufacturing Co.,* 217 F.2d 810, 815–16 (6th Cir. 1954). The purpose of a security deposit in this context is to protect the party injured from damage occasioned by the injunction. Fed. R. Civ. Pro. 65(c). In the present case the defendants have failed to show any abuse of discretion by the district court in setting the security at $250,000 for the possibility of damages arising from the injunction that on its face does not interfere with defendants' day-to-day business activities.

For the reasons stated above, the order entered by the district court on February 5, 1982, granting plaintiffs' motion for a preliminary injunction is AFFIRMED.