835 F.2d 554
 56 USLW 2381, 10 Fed.R.Serv.3d 31
 FEDERAL SAVINGS & LOAN INSURANCE CORP., In Its Corporate
Capacity, Plaintiff- Appellee,
v.
Don R. DIXON, et al., Defendants,
Richard A. Little, Patrick L. Malone, John G. Smith, Patrick
G. King, Woody F. Lemons, and John V. Hill,
Defendants-Appellants.
 No. 87-1503.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 28, 1987.
 
 Sean Connelly, Abbe David Lowell, Washington, D.C., David C. Schick, Dallas, Tex., for Little.
 Mark Alan Calhoun, J. Douglas Uloth, Calhoun, Gump, Spillman & Stacy, Dallas, Tex., for Malone.
 
 
 1
 Steve Brutsche, Jones, Brutsche', Hider & Thoeming, Dallas, Tex., for Smith.
 
 
 2
 Mark C. Clements, Jerry K. Warren, Dallas, Tex., for King.
 
 
 3
 Burleson, Pate & Gibson, Phil Burleson, Jr., Michael P. Gibson, Dallas, Tex., for Lemons.
 
 
 4
 Michael P. Carnes, Joanne Hurtekant, Dallas, Tex., for Hill.
 
 
 5
 David I. Hammond, Dallas, Tex., Harry D. Cornett, Cleveland, Ohio, Samuel J. Winer, Washington, D.C., for Federal Sav. & Loan Ins. Corp.
 
 
 6
 Appeal from the United States District Court for the Northern District of Texas.
 
 
 7
 Before BROWN, POLITZ and JOLLY, Circuit Judges.
 
 E. GRADY JOLLY, Circuit Judge:
 
 8
 After an investigation that revealed that the officers and directors of Vernon Savings and Loan Association had engaged in risky to the point of illegal lending practices, self-dealing and improper financial accounting, including fudging Vernon's books to conceal their wrongdoing, and justifying exorbitant salaries and bonuses for themselves based upon the nonexistent profits their books showed, FSLIC filed this suit and applied for a preliminary injunction that would prevent these officers and directors from dissipating their allegedly ill-gotten assets. The district court granted an injunction against six defendants: Lemons, Little, Hill, Smith, King and Malone. The district court also discussed the involvement of Dixon, but since he and his company, Dondi Financial Corp., have filed a Chapter 11 bankruptcy petition, they are not affected by this preliminary injunction.
 
 
 9
 The preliminary injunction, entered June 29, 1987, and which is the subject of this appeal, prohibited the defendants from disposing of any of their property or assets held as of April 28, 1987 without prior written approval of the court or FSLIC. The preliminary injunction excepted from its effect any newly acquired assets, and personal expenditures from old assets up to $3,500 per month, as well as limited and reasonable business expenditures. The defendants were ordered to maintain itemized monthly accountings of their expenditures. The order also provided a procedure for exceptions: the defendant could file a request for release of additional assets with FSLIC, which would have fifteen days to file objections with the court. If FSLIC filed objections, the court would decide whether to allow the release. The defendants were required to file promptly a list of all assets, indicating which were new assets. Finally, the preliminary injunction prohibited them from destroying or concealing any business records.
 
 
 10
 The defendants appeal this order of preliminary injunction. Finding ample evidence and circumstances to support the need for a preliminary injunction, we affirm most of the district court's decision. We remand, however, for limited modifications in accordance with this opinion.
 
 
 11
 * On March 20, 1987, the Federal Home Loan Bank Board ("FHLBB") appointed the Federal Savings & Loan Insurance Corporation ("FSLIC") as receiver for Vernon Savings & Loan Association. On April 27, 1987, FSLIC filed an action as successor to Vernon's claims to recover millions of dollars in damages suffered as a result of the defendants' alleged fraud, gross mismanagement and self-dealing. The complaint requested equitable relief in the form of restitution, an accounting, a constructive trust, and injunctive relief, as well as legal relief in the form of damages.
 
 
 12
 With the complaint, FSLIC filed a motion for a temporary restraining order and preliminary injunction, along with a motion for authority to conduct expedited discovery. FSLIC sought an order that would enjoin the defendants from secreting or dissipating their assets. On April 28, the district judge held a hearing by telephone on FSLIC's motions for a temporary restraining order and expedited discovery. On April 29, the judge entered a temporary restraining order, limiting the disposition of personal assets for six of the seven individual defendants, Don Dixon having petitioned for bankruptcy. On May 12, the district judge modified the temporary restraining order by increasing the limits on expenditures and by removing any new assets from its reach. On May 18, the court denied FSLIC's motion for a preliminary injunction, and, instead, extended the temporary restraining order as a result of defendant Little's inability to obtain counsel. The court again extended the temporary restraining order on May 28, June 5, June 9, and June 25, until it entered the order of preliminary injunction and memorandum order that is the subject of this appeal.
 
 
 13
 Five of six defendants appeal. Three of the five, Little, Malone, and King, have filed separate briefs raising separate issues. Lemons and Smith separately seek to adopt all of the arguments raised by the other three. Hill noticed his appeal on August 21, but did not file a brief.
 
 
 14
 In its memorandum order, the court found that the defendants had participated in a scheme to falsify Vernon's records and financial reports and to overstate Vernon's profits and net worth. The falsified records and reports were then used to justify the defendants' payments to themselves of millions of dollars in inflated salaries, bonuses and dividends. The falsified records and reports also concealed from the FHLBB the defendants' misappropriations and mismanagement. Additionally, the court found specific instances of wasting of assets, fraud, and gross mismanagement.
 
 
 15
 Upon these findings, the court entered the preliminary injunction described above.
 
 II
 A.
 
 16
 We quickly dispose of several of defendants' arguments. This whole case is colored by the fact that FSLIC is representing and protecting the public interest. One defendant tries to argue that because FSLIC has instituted this suit in its corporate capacity, it is not entitled to the solicitation which courts show to governmental agencies. This argument fails. The reason that FSLIC must take on a corporate form, and take control of the savings institution as a receiver is to protect the public interest. Furthermore, "notwithstanding any other provision of law ... the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28." 12 U.S.C. Sec. 1730(k)(1). There can be no doubt that FSLIC, in its corporate form or not, is a governmental agency in which the public interest is entrusted.
 
 B.
 
 17
 Some of the defendants argue that the trial court erred in relying upon affidavits that contained hearsay to order the preliminary injunction. In particular, the defendants object to the use of affidavits of the FHLBB examiners made during the investigation of Vernon. First, we note that a preliminary injunction proceeding is not subject to jury trial procedures:
 
 
 18
 [A] preliminary injunction is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.
 
 
 19
 University of Texas v. Comenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).
 
 
 20
 An additional reason for some leniency in the preliminary injunction stage is that it is used when quick action is necessary to prevent irreparable harm. A leading commentator explains:
 
 
 21
 [I]nasmuch as the grant of preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held....
 
 
 22
 11 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2949 at 471.
 
 
 23
 The First Circuit in Asseo v. Pan American Grain Co., Inc., 805 F.2d 23 (1986) recognized the propriety of hearsay evidence in preliminary injunctive proceedings:
 
 
 24
 Affidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding.
 
 
 25
 Id., at 26 (citations omitted).
 
 
 26
 The court below based its findings of fact on extensive evidence in the form of affidavits, several thousand pages of documents, business records of earnings, sworn statements, admissions of defendants and their answers to the complaint, and defendants' apparent efforts to block discovery. Considering the extensive nature of the record, the fact that FSLIC is safeguarding the public interest, and the fact that the defendants, for whatever reason, have not provided much evidence in response to discovery, the court's reliance on some hearsay evidence at the preliminary injunction stage was not inappropriate. This conclusion is especially so in light of the doctrine that district courts have wide discretion in granting preliminary injunctions. United States v. LULAC, 793 F.2d 636, 642 (5th Cir.1986).
 
 
 27
 Similarly, the defendants argue that the court abused its discretion by not conducting a full evidentiary hearing but instead invoking Fed.R.Civ.P. 43(e) to employ only affidavits and depositions to rule on the motion for preliminary injunction. FSLIC points out that this court has affirmed a district court's refusal to hold an evidentiary hearing on a motion for preliminary injunction. In Commerce Park at DFW Freeport v. Mardian Construction Co., 729 F.2d 334, 341 (5th Cir.1984), we held that such a hearing is not required before an injunction, particularly where factual disputes are lacking. The defendants do not point to any convincing factual disputes that we deem material to our decision today, and so we hold that granting a preliminary injunction without an evidentiary hearing was within the district court's discretion.
 
 
 28
 In a related argument, the defendants argue that their fifth amendment due process rights were violated when the court refused to hold an evidentiary hearing. Their argument is that since they had pleaded the fifth amendment because of an impending criminal prosecution involving the same matters, their only method for uncovering issues of disputed fact was to cross-examine FSLIC's witnesses. Without an evidentiary hearing, the defendants claim they could not cross-examine. This argument is undermined by the fact that the defendants failed to depose FSLIC's witnesses. Their failure to use that tool cannot now be a basis for overturning the trial court's order of preliminary injunction.
 
 C.
 
 29
 The defendants also challenge the trial court's standards upon which it granted the preliminary injunction. In its conclusions of law, the trial court held that proof that the defendants are in the process or on the verge of dissipating assets is not necessary for a preliminary injunction. Instead the court employed the standard of whether the requested relief is "reasonably necessary" in order to preserve the possibility of complete and meaningful relief at the conclusion of the litigation. FTC v. Southwest Sunsites, Inc., 665 F.2d 711, 722 (5th Cir.1982); Commodity Futures Trading Commission v. Muller, 570 F.2d 1296, 1301 (5th Cir.1978). At the end of its conclusions of law, the district court also stated:
 
 
 30
 [I]n this case the four requirements for the granting of injunctive relief have been met and the court finds that (i) there is a substantial likelihood that the plaintiff will prevail on the merits; (ii) there is a substantial threat that irreparable injury will result if the injunction is not granted; (iii) the threatened injury outweighs the threatened harm to defendant; and (iv) granting the preliminary injunction will not disserve the public interest.
 
 
 31
 Mississippi Power & Light Co. v. United Gas Pipeline Co., 760 F.2d 618, 621 (5th Circuit 1985); Canal Authority of the State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). It is not pellucid how the district court was using these different standards in conjunction. It appears that the court was looking at the "reasonably necessary" standard only to bolster its finding of a substantial threat of irreparable injury. The defendants argue that the "reasonably necessary" standard is proper only when a statute allows it. Regardless of whether the district court correctly used this standard as laid out in the cases the court cited, we find that this standard was used in addition to, and not instead of, the traditional four-pronged preliminary injunction test. The court specifically found that all four prongs of that test were satisfied, and bolstered this holding with extensive findings of fact. We are fully satisfied that the evidence supports the district court's holding that the traditional four-part test has been met. Thus we uphold the district court's decision against this argument as well.
 
 D.
 
 32
 The defendants also argue that the court's extension of the temporary restraining order for as much as sixty days was improper under Fed.R.Civ.P. 65 because that rule allows extensions to a maximum of only twenty days. We note first that many of these extensions were in deference to problems of the defendants, such as Little's apparently having no counsel. We need not decide the propriety of extending this temporary restraining order, since now that the preliminary injunction has taken effect the question is moot. Squillacote v. Local 248, Meat and Allied Food Workers, 534 F.2d 735, 746 (7th Cir.1976); Glen-Arden Commodities, Inc. v. Costantino, 493 F.2d 1027, 1030 (2d Cir.1974).
 
 III
 
 33
 One issue that more seriously concerns us on this appeal is the district court's authority to freeze assets in general, and these assets in particular.A.
 
 
 34
 As a general rule, such an injunction is not permissible to secure post-judgment legal relief in the form of damages. DeBeers Consol. Mines v. United States, 325 U.S. 212, 219-20, 65 S.Ct. 1130, 1133-34, 89 L.Ed. 1566 (1944); ITT Community Development Corp. v. Barton, 569 F.2d 1351, 1360-61 (5th Cir.1978). Such an injunction to secure future payment of possible money damages would be in the nature of a "prejudgment attachment" subject to Federal Rule of Civil Procedure 64, and through that rule to the strictures of state law.[1]
 
 
 35
 Nevertheless, case law does allow a district court to exercise its equitable powers in ordering a preliminary injunction to secure an equitable remedy such as restitution. In USACO Coal Co. v. Carbonmin Energy, Inc., 689 F.2d 94 (6th Cir.1982), the Sixth Circuit affirmed a district court's grant of preliminary injunction restraining the corporate defendants from disposing of their assets. In USACO, a defendant was the prime promoter of the investment scheme in which the plaintiffs invested. The plaintiff corporations sued under RICO, breach of fiduciary duties, common law fraud and breach of contract. The defendants had argued that the asset freeze was a prejudgment attachment in violation of Fed.R.Civ.P. 64, and the court explained why those arguments were inapplicable:
 
 
 36
 [T]hey fail to recognize that the district court in the present case did not issue the preliminary injunction for the purpose of securing a potential treble damage award under RICO. Quite clearly, the district court issued the injunction upon finding a substantial likelihood that plaintiffs would ultimately prevail on a claim for restitution based on the allegation of a breach of fiduciary duty....
 
 
 37
 USACO, 689 F.2d at 96. The court went on to explain the equitable nature of the claims that a beneficiary may assert against a fiduciary who has breached his duties:
 
 
 38
 Where the fiduciary uses funds obtained in breach of the fiduciary duty to acquire property, the fiduciary holds that property as a constructive trustee and has a duty to account to the beneficiary. Thus, breach of the fiduciary duty entitles the principal to recover in restitution any property obtained by the fiduciary as a result of the breach.
 
 
 39
 Id. at 97 (citation omitted). Constructive trust, accounting and restitution are all equitable tools.
 
 
 40
 As the Supreme Court stated in DeBeers ... "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." In DeBeers an injunction was held not to grant relief "of the same character" which might be granted finally because the injunction dealt "with property which in no circumstances can be dealt with in any final injunction that may be entered," and thus only served to secure a potential money judgment. Id. By way of contrast, in the present case the property subject to the injunction may well be dealt with by a final decree in equity requiring an accounting by the defendants as constructive trustees for the plaintiffs.
 
 
 41
 Id. at 98. The court went on to hold that the district court therefore had the power to freeze the defendants' assets through a preliminary injunction.
 
 
 42
 Similarly, in our case, the defendants were also fiduciaries who owed a duty to the savings institution as well as to the depositors. As receiver of Vernon, FSLIC may sue to protect Vernon's rights as principal. In suing for a constructive trust, an accounting, and restitution of funds milked from Vernon in violation of fiduciary duties, FSLIC is pursuing equitable remedies. Thus, just as in USACO, an asset freeze by preliminary injunction is an appropriate method to assure the meaningful, final equitable relief sought.
 
 
 43
 Although involving factual situations different from the one before us, case law provides several examples of courts properly freezing assets prior to a final determination on the merits. When dissipation of the funds to numerous recipients would effectively have destroyed the pending cause of action in Foltz v. U.S. News & World Report, 760 F.2d 1300 (D.C.Cir.1985), plaintiffs suing an employee benefits plan successfully enjoined the plan from paying out its assets to numerous possible recipients. The court found that if they had to chase the assets disbursed to these people, the plaintiffs might never recover. The Eighth Circuit addressed a similar problem in Lynch Corp. v. Omaha National Bank, 666 F.2d 1208 (1981):
 
 
 44
 Should Lynch succeed in [its] litigation, it would be forced to pursue the numerous transferees who received escrow money from ONB. Lynch's injury is irreparable and there is no adequate remedy at law because a multiplicity of suits would be required to gain relief.... [I]rreparable harm is established when the distribution of assets of a liquidated company before an adjudication of rescission claims would defeat and delay satisfaction of those claims if they were ultimately sustained.
 
 
 45
 Id. at 1212 (citations and footnote omitted). Similarly, once the defendants in this case are allowed to dissipate their assets, FSLIC may lose its opportunity to recover the alleged improper or illegal payments to the defendants in the event of final judgment.
 
 
 46
 Although the defendants argue that the Fifth Circuit cases allowing preliminary injunction asset freezes to secure equitable remedies have relied on statutes that specifically allow particular federal agencies to pursue equitable remedies including preliminary injunctions, e.g., FTC v. Southwest Securities, Inc., 665 F.2d 711 (5th Cir.1982); Commodity Futures Trading Comm'n v. Muller, 570 F.2d 1296, 1300 (5th Cir.1978), we do not find such a statute a necessity. A close look at the cases shows that the court usually relies on a statute to establish that the plaintiff (often a federal agency) has the ability to pursue some equitable relief. It is from this ability that the courts extrapolate the authority to invoke "the full range of equitable remedies traditionally available to [the district court]." FTC v. Southwest Securities, 665 F.2d at 718. These Fifth Circuit cases involving statutes that explicitly granted the ability to pursue preliminary injunctions did not need to address the more general question of the availability of preliminary relief whenever final equitable remedies exist. USACO, discussed earlier, however, did address the question and found that full equitable powers came into play to preserve final equitable relief. A Ninth Circuit case relied upon a statute for the plaintiff's right to final equitable relief and extrapolated the right to preliminary relief from that:
 
 
 47
 Because the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy. The Commission says that the preliminary injunction is necessary to preserve the possibility of rescission of contracts and restitution of money obtained by fraud.
 
 
 48
 F.T.C. v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir.1982). We agree with the Ninth Circuit that once a plaintiff establishes an equitable cause of action, the district court may use its full equitable powers to grant appropriate preliminary relief as well.
 
 
 49
 In the case before us, FSLIC's right to final equitable relief derives not from any one statute, but rather from its position as receiver of Vernon. (We note, however, that the statutes creating and governing FSLIC do allow it to suspend or remove directors or officers of insured institutions who have violated laws, rules or regulations or who have engaged in any unsafe or unsound practices. 12 U.S.C. Sec. 1730(g)(1). This and other flexible remedies available to FSLIC reinforces our view that FSLIC is entitled to have access to equity jurisdiction.)
 
 
 50
 As receiver for Vernon, there is no doubt that FSLIC has the right (and even the responsibility) to pursue equitable causes of action such as a constructive trust, an accounting, and restitution, when a savings institution has been defrauded as FSLIC contends it has here. From those equitable causes of action flow the courts' ability to fashion preliminary relief such as the preliminary injunction in this case. This is especially true where the evidence strongly indicates that the assets were ill-gotten gains at the expense of an interest of the public protected by law. In the instant case, just one example of such a violation is that the defendants caused Vernon's net worth to fall below the minimum required by regulation, 12 C.F.R. Sec. 563.13 (1982), and paid dividends that were illicit considering Vernon's true net worth.
 
 
 51
 This conclusion is bolstered by Fifth Circuit cases elaborating upon the ultimate flexibility of the equitable powers of federal courts. This circuit, for example, upheld a preliminary injunction freezing a corporation's assets in order to preserve the status quo and future equitable remedies. Meis v. Sanitas Service Corp., 511 F.2d 655 (5th Cir.1975). That case explained that in considering preliminary injunctions under Rule 65,
 
 
 52
 each case must stand on its own facts, based upon the generally accepted notion that the purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. "It requires a balancing of the probabilities of ultimate success on the merits with the consequences of court intervention at a preliminary stage. The prerogative to weigh the nice distinctions involved belongs to the district court, not this court."
 
 
 53
 Id. at 656 (citation omitted). That case also explains that the district court is free to mold the temporary decree to the peculiar circumstances of the case, because:
 
 
 54
 The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between private claims.
 
 
 55
 Id. at 658, n. 3 (citations omitted).
 
 B.
 
 56
 The general flexibility of equitable powers is enhanced where, as here, the public interest is at stake. As the Supreme Court stated in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1322 (1946):
 
 
 57
 Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.
 
 
 58
 Id., 328 U.S. at 398, 66 S.Ct. at 1089 (emphasis added). Our case, too, concerns the public interest. The purpose of the statute that authorized the FHLBB to appoint FSLIC as Vernon's receiver was:to safeguard the financial integrity of the [FSLIC] which provides savings account insurance, not only for federally chartered savings and loan associations, but for 2,400 state-chartered associations as well. Federal insurance of savings accounts is fundamental to the financial stability of the entire savings and loan industry.... Therefore, if the ability of the FSLIC to meet its insurance commitments is ever called into question, there would be grounds for serious public concern.
 
 
 59
 S.Rep. No. 1263, 90th Cong. 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2530, 2535 (emphasis added). Because FSLIC concerns itself with the savings of many depositors, the investments of numerous stockholders, and, in fact, the stability of financial institutions themselves, equity's powers to aid FSLIC in its endeavors are even broader than for private claims. Thus, we hold that its general equitable powers give the district court the authority to freeze assets when necessary, as here, to preserve meaningful equitable remedies.
 
 C.
 
 60
 Some of the defendants argue that the district court could not freeze their assets because, although they may have benefitted from unjustified salaries, bonuses, dividends and the like, the district court has not made sufficient findings to support a probability that they were involved in the fraud, bad lending practices and other culpable conduct. Such a finding is not necessary, however, because the district court did find that all defendants had received exorbitant salaries, bonuses, loans, and other compensation that not only were completely unjustified but were in blatant disregard of the well-being of the institution and the rights of the depositors because of Vernon's true financial state. It would certainly appear in this case that the court could reasonably conclude that each of the defendants, as responsible key officers of the institution, knew of the true condition; however, regardless of whether these officers knew that this compensation was not justified, FSLIC has a right to restitution of these monies if the officers received them at the unjustifiable expense of the depositors, FSLIC, and possibly innocent shareholders. The evidence is overwhelming that the compensation these officers and directors received was not justified; in fact, they do not appear to argue that it was. Some of them do argue, however, that given their knowledge at the time they received the bonuses, etc., they did not engage in any bad faith or wrongdoing by accepting the money. Whether they knew of the fraud taking place does not affect FSLIC's equitable remedy of restitution when all defendants were the unjustifiable beneficiaries, if not instigators, of an illegal scheme and conspiracy that defrauded the depositors. The district court specifically found that Vernon paid dividends in 1985 and 1986 when, if its true financial state had been known, such payment would not have been permitted. Dividends received by the defendants during this time were:
 
 
 61
 Lemons $301,500
Little 60,200
Hill 28,935
Smith 24,327
Malone 61,200
King 52,003
 --------
TOTAL $527,165
 
 
 62
 These amounts in all likelihood will be subject to restitution and are properly frozen. The district court also found the defendants' compensation for fiscal years ending June 30, 1984, 1985 and 1986 to be:
 
 
 63
 Total Bonus
 Salary Bonus Paid Deferred TOTAL
 -------- ---------- -------- -----------
Dixon $800,000 $2,599,853 $912,415 $ 4,312,268
Lemons 472,500 1,067,046 555,814 2,095,360
Little 480,375 1,094,826 598,625 2,173,826
Hill 339,000 371,793 304,153 1,014,946
Smith 267,000 238,183 214,770 719,953
Malone 170,000 152,060 139,587 461,647
King 380,000 339,624 315,013 1,034,637
 -----------
 TOTAL $11,812,637
 
 
 64
 In addition, the court found that Malone received $11,950 through a payment allegedly made for "consultation services" rendered by Durward Curlee and Associates; Lemons received approximately $206,000 of a purported loan from Vernon to El Dorado Associates, Ltd; a corporation owned by Lemons received $52,276 in deferred compensation in July 1986; and Vernon made the following loans in August 1986:
 
 
 65
 Name Date of Loan Amount
---- ------------ ------
Hill 8/8/86 $ 269,000
King 8/8/86 279,000
Smith 8/8/86 190,000
Little 8/14/86 350,000
Malone 8/15/86 123,792
 ----------
 Total August 1986 loans to
 officers and former officers $1,211,792
 
 
 
 All of these enumerated self-promulgated emoluments were granted and received at a time when the institution was on an irreversible course to collapse and disaster.
 IV
 Although we are in substantial agreement with the district court's issuance of the preliminary injunction, we will now turn to address some matters that the district court may face on remand. First, we should note that the district court will not be required to initiate any proceeding or steps to modify its injunction; that burden will be on the defendants individually or collectively. If, however, in the light of the comments that follow, further proceedings do ensue, we make some observations to guide the district court. Outside the following comments, however, we have no reservations about the propriety of the injunction and the district court's actions.
 A.
 First, the substantial part of the above salaries, and all of the bonuses and loans, based on the evidence before the district court, will in all likelihood be subject to complete restitution. With respect to salaries, however, we assume that the defendants, or at least some of them, were entitled to some salary, and we remand to the district court for a consideration of the matter. The district court may conclude that a given defendant's conduct was so venal, reckless and/or criminal that he deserved no salary. For those legitimately doing a duty or performing a job, however, the district court must consider whether they were entitled to a reasonable salary and, if so, what amount is reasonable.
 B.
 Second, one of our chief concerns with the district court's preliminary injunction centers on the question of attorneys' fees. As the injunction now stands, attorneys' fees for each defendant must come from new assets or the $3,500 a month personal expense allowance. We do not know the extent of the defendants' new assets, but it is possible that they do not exist, leaving the defendants to maintain families, homes and attorneys' fees on a monthly income of $3,500. If the whole allowance were available for attorneys' fees, each defendant could purchase thirty-five hours a month at $100 an hour--not a significant amount in major litigation. After other necessary expenses are deducted, however, the defendants may have little left to allocate to their defense against charges that have not yet been proved.
 FSLIC argued for this limitation by pointing out that the attorney-client privilege could provide a convenient shield for defendants to cover illegitimate payments to others under the guise of paying legal expenses. In arguing for the preliminary injunction, FSLIC asserted that its purpose was not to cripple the defendants' ability to defend themselves, and that it would approve all reasonable requests for releases of assets to pay attorneys. Since the preliminary injunction took effect, however, FSLIC has argued more stringently that the defendants should not be allowed to use the saving institution's assets to defend themselves in actions brought against them for ruining the institution. As compelling as that argument is, and despite considerable evidence that its factual premise is correct, this suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. See, e.g., United States v. Thier, 801 F.2d 1463 (1986), mod. on den of reh'g 809 F.2d 249 (1987). Thus we conclude that some kind of an allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt assets; the burden, however, will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released.
 Nevertheless, we also recognize the strength of FSLIC's original argument that the defendants should not be allowed to circumvent the preliminary injunction by dissipating their assets under the shield of attorney-client privilege. For this reason, the district court should modify its order so as to allow each defendant's reasonable request for a release of assets that are necessary to pay attorneys unless FSLIC can carry the burden of demonstrating a likelihood of impropriety on the part of the defendant.
 C.
 Third, the district court apparently intended its preliminary injunction to cover legal remedies as well as equitable ones. To the extent the injunction can be read to apply to assets beyond those subject to equitable remedies, modification will be required. At the same time, however, the district court may, of course, include under the preliminary injunction any assets subject to equitable remedies that are not now specifically listed.
 In assuring that all of the frozen assets relate to equitable remedies such as restitution and rescission, the district court should allow the defendants to demonstrate any legitimate claim they have to any of the assets that may have been frozen; for example, the defendants may be able to show that certain assets they possess were acquired at a time or through such means that there is no likelihood that they were acquired from the ill-gotten salaries, bonuses, etc. subject to the preliminary injunction. Additionally, as we have noted, the defendants may be entitled to some reasonable salary. However, as we have stated throughout this opinion, FSLIC has made an exceptionally strong case that it is entitled to restitution to the extent alleged in its pleadings; thus, FSLIC having made a prima facie case against the defendants, the defendants will bear the burden of showing their entitlement to an exemption of any of the frozen assets, liquid or other.
 Once the total amounts subject to restitution and other equitable remedies are determined for each defendant, the defendants will have the opportunity to post a bond acceptable to the district court for that amount, and if they do this, their assets should be released. Otherwise the freeze should remain intact.[2]D.
 We might be inclined to question the preliminary injunction more critically if there had been any cooperation on the part of the defendants. Since, however, the defendants did not cooperate by demonstrating their net worths, since they offered little evidence to rebut the overwhelming case against them, and since a vital public interest was at stake, the district court was correct to assume that all the defendants' assets were subject to restitution. The defendants allege that they have failed to cooperate because they must invoke their fifth amendment right not to incriminate themselves. This fifth amendment right serves to protect individuals from criminal, not civil, liability. The district court in a civil case so crippled by the fifth amendment as this one, must balance the defendants' rights not to incriminate themselves against the plaintiff's right to a meaningful remedy. Precedent supports the trial court's inference that the defendants' testimony, if provided, "would have been adverse to each of them." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); Pagel, Inc. v. SEC, 803 F.2d 942, 945 (8th Cir.1986); United States v. Little Al, 712 F.2d 133, 135-36 (5th Cir.1983); SEC v. First Financial Group of Texas, Inc., 659 F.2d 660, 668-69 (5th Cir.1981).
 V
 In concluding, we make clear that we decide this case based upon its specific facts; we do not intend this opinion as authority that in every receivership FSLIC has automatic access to the extreme preliminary injunction used against these defendants. Besides the public interest present in every FSLIC receivership, this case combines egregious facts demonstrating colossal fraud and recklessness against Vernon, and a virtually complete lack of cooperation by the defendants in locating missing assets. These factors persuade us to uphold the district court's preliminary injunction as set forth in this opinion.
 If the defendants properly seek modifications, we have suggested the following limitations on the preliminary injunction: the asset freeze relates only to assets subject to the equitable remedies of restitution or rescission, those frozen to satisfy a legal remedy only are excluded; the defendants must have the opportunity to post bond for the entire amounts subject to the freeze, otherwise the freeze over all their assets will remain in effect; the district court should exclude from the total amounts subject to restitution any salary amounts it deems reasonable for each defendant; and reasonable requests for release of assets necessary to pay attorney's fees must be granted unless FSLIC can demonstrate a likelihood of impropriety by the defendants in making the payments.
 Of course, as we have noted, for example in footnote 2, the district court may consider all motions to modify the preliminary injunction or such other motions seeking relief from its restraints or seeking tightened restraints as may be brought before it.
 AFFIRMED IN PART REVERSED IN PART AND REMANDED.
 
 
 [1]
 We are unwilling to say that no circumstances could support an injunction to secure a legal remedy. For example, the Tenth Circuit has stated that "[d]ifficulty in collecting a damage judgment may support a claim of irreparable injury" and reinstated a preliminary injunction to prevent the corporate defendant in that case from selling its assets and distributing the proceeds to its members because such a distribution might render impossible the plaintiff's attempts to collect it back. Tri-State Generation v. Shoshone River Power, Inc., 805 F.2d 351, 355 (1986)
 This court has held, "The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury," (one of four criteria necessary to obtain a preliminary injunction). Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464 (5th Cir.1985). See also Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 257, 73 L.Ed. 972 (1929); Placid Oil Co. v. United States Dept. of Interior, 491 F.Supp. 895, 906 (N.D.Tex.1980). The fact that some circumstances may warrant a preliminary injunction to secure monetary damages bolsters the proposition that equitable powers are extremely flexible and are definitely available to secure future equitable remedies when the movant can demonstrate all the requirements for a preliminary injunction.
 
 
 [2]
 The defendant Malone complains that because of the freeze order he may well lose his house. If Malone or any other defendant brings such a complaint to the attention of the district court, the district court should give the matter its careful consideration. At the appellate level, we are struck by two impressions: (1) To allow the house to be repossessed and disposed of at a forced sale may not be the best way to preserve assets, and (2) allowing a defendant to lose legitimate assets he currently and legitimately possesses, potentially conflicts with the avowed rationale of preliminary injunctions, that is, to preserve the status quo. It is, however, for the district court first to consider whether it should allow additional expenditures to prevent the further dissipation of assets