# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 5, 2012

Lyle W. Cayce
Clerk

No. 11-40834

ADRIAN TISINO; MICHAEL ALANIZ; JESUS ALVARADO; EDDIE
ALMENDARIZ; JAMES BARTON; ET AL.,

Plaintiffs–Appellees

v.

R & R CONSULTING AND COORDINATING GROUP, L.L.C.; LEGAL
MANAGEMENT, L.L.C.; ROBERT PAUL ROSS, II, Individually; ROBERT
PAUL ROSS, II, Trustee of the Ross Living Trust Number Three,

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 3:10-cv-244

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendants–Appellants R&R Consulting and Coordinating Group, L.L.C.
("R&R"), Legal Management, L.L.C. ("Legal Management"), and Robert Paul
Ross II, individually and as trustee of the Ross Living Trust Number Three
("Ross II"), appeal the district court's entry of a preliminary injunction in favor
of Plaintiffs–Appellees Adrian Tisino, Michael Alaniz, and others ("Appellees").

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-40834

This appeal relates directly to paragraph 2 of the preliminary injunction, which freezes certain assets derived from settlement proceeds obtained in an earlier lawsuit brought on Appellees' behalf by the law firm of Moreno, Becerra and Casillas ("MBC") against British Petroleum (the "BP Litigation"). In granting injunctive relief, the district court found that a portion of the BP Litigation settlement proceeds were improperly paid to disbarred attorney Paul Ross ("Ross"), now deceased, who had illegally solicited Appellees on MBC's behalf. As discussed herein, we find that the district court did not abuse its discretion and therefore affirm the preliminary injunction.

Appellants first contend that the district court erred in granting a preliminary injunction that "freeze[s] . . . *all* assets of Appellants without limitation as to the source of the assets," as they did not receive adequate notice that such relief was sought or would be granted. We disagree. As an initial matter, Appellants mischaracterize the nature of the injunctive relief granted in paragraph 2. The injunction does not, as Appellants contend, extend to assets unrelated to the BP Litigation. The district court's findings of fact—which Appellants do not challenge on appeal—explicitly state that all of the assets at issue in the preliminary injunction are in fact derived from the BP Litigation settlement proceeds. The district court found that MBC paid Ross approximately $4,900,000 to $7,000,000 out of the BP Litigation settlement proceeds, that these funds were paid into Ross's Edward Jones accounts, and that Ross subsequently "transferred some of the fees improperly paid to him by MBC to accounts held in the name of R&R, Legal Management and the Trust." The court then concluded that "all funds and/or investment securities presently held in *any and all accounts* in the names of *Ross, the Trust, R&R and Legal Management* are derived, directly or indirectly, from the $4,900,000.00+ payments from MBC to Ross." Consistent with these factual findings, paragraph 2 of the preliminary injunction enjoins Ross II "from taking any action or inaction that will have the

2

No. 11-40834

effect of or permit a transfer, conveyance, or removal of any funds, amounts, value, investments, held by the *Ross Number Three Living Trust, Edward Jones, Legal Management, LLC, R & R Consulting and Coordinating Group*," absent a court order. As such, the injunctive relief relates directly to those assets derived from MBC's original payment to Ross out of the BP Litigation settlement proceeds and subsequently transferred, at least in part, by Ross into the accounts of R&R, Legal Management, and the Trust. Paragraph 2 of the preliminary injunction is therefore not a general freeze "without limitation as to the source of the asset," but rather a freeze of assets specifically related to the instant lawsuit.

We further conclude that Appellants received sufficient notice of this injunctive relief, as required by Federal Rule of Civil Procedure 65(a)(1).[1] Such notice is provided through paragraph 86 of the Appellees' operative complaint, which asserts a breach of fiduciary duty claim and requests "imposition of a constructive trust over all of their BP settlement proceeds in the actual and/or constructive possession of any of the defendants . . . ." Under Texas law, a constructive trust is a flexible equitable remedy applied where one party "holds funds which in equity and good conscience should be possessed by another." *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). As an order that "purport[s] to control [a party's] behavior over an extended period of time," a constructive trust is itself a type of preliminary injunction. *Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992). This court and others have upheld broad

---

[1] We have recognized that "Rule 65(a) does not specify the particular type of notice required in order properly to bring defendants in an injunction proceeding before the trial court," *Plaquemines Parish Sch. Bd. v. United States*, 415 F.2d 817, 824 (5th Cir. 1969), and that "[t]he form of notice is a matter for the trial court's discretion." *In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 319 (5th Cir. 2000); *see also Marshall Durbin Farms, Inc. v. Nat'l Farmers Org.*, 446 F.2d 353, 356 (5th Cir. 1971) ("[T]he requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them." (citation and internal quotation marks omitted)).

preliminary injunctions based upon a party's request for entry of a constructive trust. *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) ("In suing for a constructive trust, an accounting, and restitution of funds milked . . . in violation of fiduciary duties, [plaintiff] is pursuing equitable remedies. Thus, . . . an asset freeze by preliminary injunction is an appropriate method to assure the meaningful, final equitable relief sought."); *USACO Coal Co. v. Carbonmin Energy, Inc.*, 689 F.2d 94, 96-98 (6th Cir. 1982). Appellees' request for imposition of a constructive trust should therefore have put Appellants on notice that Appellees sought to freeze any and all of Appellants' assets that were related to the underlying litigation.

The circumstances here are entirely unlike those in *Marshall Durbin Farms, Inc. v. National Farmers Organization*, 446 F.2d 353, 356 (5th Cir. 1971), upon which Appellants rely. There, we found inadequate notice after the district court scheduled a preliminary injunction hearing just days after the plaintiffs requested such relief. In light of the extensive record and the limited time in which to prepare, we found that the plaintiffs had "thrust the defendants into an impossible position insofar as both preparing and presenting an effective response to the motion for preliminary injunction," and reversed the injunction. *Id.* at 355-58. Here, in contrast, the district court held the preliminary injunction hearing fifteen days after the Appellees filed their motion for entry of a temporary restraining order and preliminary injunction. The hearing also came nearly two months after the Appellees requested imposition of a constructive trust in their amended complaint, and ten months after the lawsuit was first filed. Unlike the defendants in *Marshall Durbin*, Appellants here received sufficient notice of the requested injunctive relief.

We also reject Appellants' contention that the district court's preliminary injunction violates general equitable principles by freezing assets unrelated to the BP Litigation settlement proceeds. *See In re Fredeman Litig.*, 843 F.2d 821,

No. 11-40834

824 (5th Cir. 1988). As explained above, the preliminary injunction does not in fact include unrelated assets, but rather extends only to assets specifically at issue in this litigation. Even if the preliminary injunction could have been more precise with respect to the exact assets at issue, such inaccuracy would not require reversal. Under Texas law, a court is not required to exercise mathematical precision when deciding which assets should be covered by a constructive trust. *See, e.g.*, *Gatlin v. GXG, Inc.*, No. 05-93-01852-CV, 1994 WL 137233, at *8 (Tex. App.—Dallas 1994); *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 439 (Tex. Civ. App. 1968). Rather, the burden is upon the party opposing an injunction to prove that certain assets are unrelated to the underlying litigation and should therefore be excluded from a constructive trust. *See Gatlin*, 1994 WL 137233, at *8. As Appellants failed to meet their burden, the district court was within its discretion to grant broad injunctive relief.

Finally, we hold that the district court properly concluded that "[t]he irreparable harm which is likely to be suffered by the [Appellees] unless the Court enters a preliminary injunction substantially outweighs any harm that may be occasioned to [Appellants] if the preliminary injunction is entered." The district court found that "Ross II has sought to divert, deplete and/or dissipate substantial portions of the funds and/or investment securities created out of the" BP Litigation settlement funds paid to Ross, and "[u]nless immediately restrained from doing so, Ross II will continue to divert, deplete and/or dissipate the funds and/or investment securities paid to Ross by MBC and/or place those funds and/or investment securities beyond the reach of Ross' creditors, including the Plaintiffs." Appellants did not object to these findings of fact before the district court and do not challenge them on appeal. The significant risk that BP Litigation settlement funds would be dissipated and placed beyond Appellees' reach constitutes a threat of substantial irreparable injury.

No. 11-40834

Balanced against this undisputed threatened injury is Appellants' claim that they will be unable to use frozen assets to pay attorney's fees or taxes. Paragraph 2 of the preliminary injunction permits Appellants to withdraw funds upon "notice provided to [the district court] and a signed order by [the district court] granting such disposition and/or transfer." It is up to the district court in the first instance to decide whether and to what extent funds can be withdrawn from the frozen assets for any purpose, including to pay attorney's fees and taxes. Appellants' concerns are at this point speculative. We decline to address them.

For the foregoing reasons, the district court's preliminary injunction is AFFIRMED.