CORNELIA G. KENNEDY, Circuit Judge.
John Z. DeLorean, Thomas W. Kimmerly, and several DeLorean-related corporations appeal the District Court order affirming a Bankruptcy Court order requiring any proceeds from any sale of the assets or stock of Logan Manufacturing Company to be deposited in an escrow account under the Bankruptcy Court’s control.
I. FACTS
DeLorean Motor Company (“DMC”) filed a petition for reorganization under chapter 11 of the Bankruptcy Code on October 21, 1982. In June 1982 the unsecured creditors’ committee brought an adversary complaint seeking to have the assets of Logan Manufacturing Company made part of the bankruptcy estate of DMC. Logan and DMC are both controlled by DeLorean Manufacturing Company, which is owned by Cristina (a Nevada corporation), which is owned by John Z. DeLorean.
The creditors’ committee’s theory was that Logan had been acquired by DeLorean Manufacturing Company with assets that could ultimately be traced back to DMC and its subsidiaries. The committee made the following allegations in support of its theory: DMC had given GPD Services, Inc. (a Panamanian corporation operating through a Swiss post office box) about $12.5 million out of funds that DeLorean Research Limited Partnership (“DRLP”) (a limited partnership of which DMC was general partner) had raised for DMC’s use. DeLorean Motor Cars Limited (“DMCL”) (a Northern Ireland subsidiary of DMC) had given GPD a further $5.1 million. In return for these payments, GPD was purportedly to pay Lotus Cars Ltd. for research and development work. DMCL paid Lotus for this work directly, however, and Lotus never received any payments from GPD. Thereafter, John Z. DeLorean obtained a “super-balloon” Swiss loan of about $9 million, of a type normally secured by an offsetting bank account. The proceeds of this loan were used to pay off a loan from a Chicago bank, the proceeds of which had been used to purchase Logan. The committee alleged that there was circumstantial evidence that John Z. DeLorean had used the money paid to GPD to acquire Logan through DeLorean Manufacturing Company.
After receiving an affidavit stating that the sale of Logan was impending, the Bankruptcy Court issued an order to show cause why the proceeds of any sale of Logan or its assets should not be “attached.” A hearing was held on June 30, 1983, at which the committee offered evidence in support of its allegations. The Court received portions of the testimony of Christopher Hughes, an English accountant who had investigated transactions involving DMCL, given in a earlier proceeding in the Bankruptcy Court. Hughes testified concerning the transactions among DMC, DMCL, GPD, and Lotus, and said that the $17.6 million paid to GPD remained unaccounted for. The Court then received portions of the deposition of Eric Javits, an attorney, who said that John Z. DeLorean had used the services of a Swiss corporate lawyer recommended by Javits, and that DeLorean had asked him whether DeLorean would have to disclose to the SEC the identity of the partner involved in the research and development contract. Finally, the Bankruptcy Court heard the live testimony of Yale Levin, the court-appointed examiner who had been investigating the allegations. Levin testified that he had been unable to account for the $17.6 million paid to GPD, that the Swiss bank loan must have been secured by some unidentified collateral, and that the proceeds of the Swiss bank loan to John Z. DeLorean had been used to acquire Logan. Levin concluded that there was a reasonable possibil *1226 ity that Logan’s assets represented property of the DMC estate and that he believed it worthwhile to continue his investigation.
The Bankruptcy Court then entered an order enjoining John Z. DeLorean, Cristina, DeLorean Manufacturing Company, Logan, and Thomas Kimmerly (DMC’s general counsel) from disposing of any proceeds of the sale of Logan’s assets or stock, and directing that any such proceeds be placed with an escrow agent. This order was affirmed by the District Court, and the defendants appeal.
II. STANDING
Defendants claim that the unsecured creditors’ committee had no standing to pursue this complaint without first asking DMC as debtor-in-possession to sue and then asking the Bankruptcy Court for permission to sue if DMC refused. On December 21, 1983, however, DMC’s petition was amended to seek relief under chapter 7 of the Bankruptcy Code, rather than the chapter 11 reorganization originally sought. On January 4, 1984 the trustee was substituted for the creditors’ committee as plaintiff in this adversary proceeding in the Bankruptcy Court. There is no question as to the trustee’s standing. The defendants’ objection to standing has therefore become moot.
III. MOOTNESS
The committee claims that the entire appeal became moot when the parties stipulated to entry of an order regarding the sale of Logan, which was entered by the Bankruptcy Court first as a temporary restraining order on January 17, 1984 and then as a preliminary injunction on January 27,1984. That injunction (1) restrained the proposed sale of Logan or its assets to Pacific International Equipment, Inc.; and (2) provided that at least twenty days before any other proposed sale of Logan all counsel would be notified and served with all sale documents and certain information about the buyer.
The January 27 preliminary injunction did not direct the proceeds of a sale of Logan to be placed in escrow. The transcript of proceedings regarding the January injunction reveals that the parties and the Bankruptcy Court were operating from the premise that if a sale was consummated the proceeds would be placed in escrow in accordance with the earlier injunction. The trustee was concerned with preventing in any form the sale of Logan to Pacific, which was allegedly controlled by a close associate of John Z. DeLorean. The injunction was designed to give the trustee time to object to any sale that might not be in the best interest of the state.
If this Court were to vacate the preliminary injunction under review, the defendants would not be obligated to place proceeds from a sale of Logan in escrow. The January 27 injunction does require the defendants to give notice before any proposed sale, giving the trustee time to object, but does not duplicate the escrow provisions of the earlier injunction. This Court is thus in a position to grant effectual relief to the defendants, and the appeal is therefore not moot. See International Brotherhood of Teamsters v. Zantop Air Transport Corp., 394 F.2d 36 (6th Cir. 1968); Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895).
IV. VALIDITY OF BANKRUPTCY COURT’S ORDER
The Bankruptcy Court’s order was issued under 11 U.S.C. § 105(a), which states: “The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” Defendants attack the validity of the order on several grounds. First, they contend that the order must be considered an attachment under Fed.R.Civ.P. 64 and governed by Michigan law. Defendants argue that the Michigan attachment procedures were not followed in this case and are unconstitutional if they were followed. In the alternative, defendants contend that if the order is a preliminary injunction governed by Fed.R. Civ.P. 65 it is nonetheless invalid, because *1227 (1) the procedures required by Rule 65 were not complied with; and (2) the evidence before the Bankruptcy Court was insufficient to support the injunction.
A. Applicability of Michigan Attachment Statute
Defendants contend that the Bankruptcy Court’s order must be construed as an attachment under Rule 64. Rule 64 provides that:
[A]ll remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held____ The remedies thus available include ... attachment ... however des-ignated____
Defendants’ argument assumes that this provision dictates that state law is the exclusive means through which to effectuate an attachment. At least one commentator has suggested that Rule 64 does not require that an injunction otherwise proper under Rule 65 must also conform to state law merely because it is a provisional remedy. See 7 Moore’s Federal Practice f! 64.-04[3] at 64-19 to 64-21 (2d ed.). We need not decide this question, however, because under precedent in this Circuit it is clear that Rule 64 does not apply to this case.
In USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982), this Court reviewed a preliminary injunction that restrained the promoter of a corporation from transferring or disposing of assets. The district court had frozen the assets to protect the shareholders’ possible right to restitution of assets representing funds fraudulently obtained from shareholders by the corporate promoter. This Court held that the preliminary injunction was not covered by Rule 64 because it was not “for the purpose of securing satisfaction of the judgment ultimately to be entered in the action.” In US ACO Coal, “[t]he injunction was not issued in order to secure a ... damages award that might ultimately result ... but rather was issued to protect rights to reach the defendants’ property____ The injunction here preserves assets for which the defendants may be accountable under a constructive trust.” 689 F.2d at 97.
The preliminary injunction in the present case is similarly not for the purpose of securing satisfaction of the judgment ultimately to be entered in the action. The trustee does not seek to attach the Logan assets in order to satisfy a possible damage award. The relief sought is merely a declaration that the assets are a part of the bankruptcy estate. Once found a part of the estate, the assets are within the constructive possession of the trustee, who will eventually distribute the assets. This situation closely parallels that in US ACO Coal.
Defendants rely on Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc., 475 F.Supp. 973 (D.Mass. 1979) and In re Cohn, 11 B.R. 611 (Bankr. D.Mass.1981) for the proposition that a preliminary injunction that effectuates an equitable attachment must conform to state attachment procedures. In Anderson Foreign Motors the court did not decide this question because it held that the injunction there was proper under either Rule 64 or Rule 65. In re Cohn, which incorrectly relied on Anderson Foreign Motors on this point, is simply inconsistent with USACO Coal. The Bankruptcy Court’s order in the present case was not “for the purpose of securing satisfaction of the judgment ultimately to be entered,” and thus was not governed by Rule 64. We therefore need only consider whether it was a valid preliminary injunction under Rule 65.
B. Validity of Preliminary Injunction
1. Compliance with Federal Rules
Defendants contend that the Bankruptcy Court’s order, if construed as a preliminary injunction under Rule 65, did not comply with Federal Rules of Civil Procedure 52 and 65(d). Rule 52 requires the court to set forth findings of fact and con- *1228 elusions of law. Four factors are particularly important in determining whether a preliminary injunction is proper: (1) the likelihood of plaintiffs success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. E.g., USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982); Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100 (6th Cir.1982); Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir.1977). Rule 52 requires a district court to make specific findings concerning each of these four factors, unless fewer are dispositive of the issue. United States v. School District of Ferndale, 577 F.2d 1339, 1352 (6th Cir.1978). In its order the Bankruptcy Court incorporated its findings of fact and conclusions of law made orally at the June 30, 1983 hearing.[1] The transcript of the Bankruptcy Judge’s oral opinion reveals that he made oral findings roughly corresponding to each of these four factors, and balanced all four factors in reaching the conclusion that preliminary relief was justified. The oral opinion also sets forth reasons for issuance of the preliminary injunction in compliance with Rule 65(d).
2. Degree of Likelihood of Success Required
Defendants also challenge the Bankruptcy Court’s preliminary injunction on substantive grounds. A lower court’s decision on whether to grant a preliminary injunction may be disturbed only if an abuse of discretion. E.g., USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982); Adams v. Federal Express Corp., 547 F.2d 319 (6th Cir.1976), cert. denied, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977). Defendants contend that there was not sufficient evidence before the Bankruptcy Court to establish “a strong or substantial likelihood of success on the merits.” Before evaluating the factual support for the injunction we must decide whether a strong or substantial likelihood of success was a prerequisite for its issuance.
Defendants cite USACO Coal Co., 689 F.2d at 98, and Adams, 547 F.2d at 323, for the proposition that a strong likelihood of success on the merits must be shown before a preliminary injunction may be issued. In these two cases the Sixth Circuit stated that it must consider, among other factors, “whether the plaintiffs have shown a strong likelihood of success on the merits” in determining whether the District Court had abused its discretion. However, in neither case did the Court hold that a strong likelihood of success was an absolute requirement. In both cases the Court merely evaluated all four factors and concluded that the lower court had not abused its discretion.[2]
Stronger support for a strict standard may be found in Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir.1977). In that case the Court upheld the denial of a preliminary injunction in part because the likelihood of success on the merits was “remote.” In a footnote the Court criticized two earlier decisions, Ohio v. Callaway, 497 F.2d 1235, 1241 (6th Cir.1974), and SEC v. Senex Corp., 534 F.2d 1240, 1241 (6th Cir.1976), which had referred to “a possibility of success on the merits” as a prerequisite for granting preliminary injunctive relief. In the same footnote the Court then went on to say: “A *1229 showing of a mere ‘possibility’ of success would render the test for a preliminary injunction virtually meaningless. Therefore, we reiterate that the plaintiffs must demonstrate a strong or substantial likelihood or probability of success on the merits.” 563 F.2d at 261 n. 4 (emphasis in original).
Earlier Sixth Circuit decisions have not consistently held lower courts to such an inflexible standard, however, particularly when a preliminary injunction is needed to preserve the situation for investigatory purposes. In Brandeis Machinery & Supply Corp. v. Barber-Greene Co., 503 F.2d 503, 505 (6th Cir.1974), the Court quoted the Second Circuit’s opinion in Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir.1953):
[I]t will ordinarily be enough that the plaintiff has raised questions going to ' the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.
In American Federation of Musicians v. Stein, 213 F.2d 679, 683 (6th Cir.), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954), we stated:
When the nature of the questions which arise upon a suit make them a proper subject for deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined.
In a much earlier case, this Court said: “The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated____” Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur, 53 F. 98, 101 (6th Cir.1892).
The varying language applied to the likelihood of success factor can best be reconciled by recognizing that the four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors. This was explained by the court in Metropolitan Detroit Plumbing & Mechanical Contractors Association v. Department of HEW, 418 F.Supp. 585, 586 (E.D.Mich.1976):
This apparent disparity in the wording of the standard merely reflects the circumstance that no single factor is determinative as to the appropriateness of equitable relief. In addition to assessing the likelihood of success on the merits, the court must consider the irreparability of any harm to the plaintiff, the balance of injury as between the parties, and the impact of the ruling on the public interest. In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction.
This language was quoted with approval by the Court in Roth v. Bank of the Commonwealth, 583 F.2d 527, 537-38 (6th Cir.1978), cert. dismissed, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). In Roth, the district court had expressly declined to find that plaintiffs were “likely to prevail” or had a “strong probability of success” on the merits. The preliminary injunction was nonetheless affirmed because the other factors militated strongly in plaintiffs’ favor. In Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982), this Court approved a test that would allow a court to grant a preliminary injunction “where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued.”[3]
*1230 In the present case the three factors other than likelihood of success were all strongly in favor of issuing the injunction. The Bankruptcy Court structured its injunction so as to minimally affect the defendants’ ability to sell Logan if they so desired. No other potential harm to defendants was identified. The Bankruptcy Court was also justified in concluding that the plaintiff and the public interest risked great injury if the injunction were not granted. In this situation, a lower court is within its discretion .in issuing a preliminary injunction if the merits present a sufficiently serious question to justify further investigation.
3. Factual Support of Injunction
Defendants contend that the Bankruptcy Court had insufficient factual support for issuing the preliminary injunction. This argument is particularly directed at the evidence concerning the likelihood of success on the merits.
The primary evidence upon which the Bankruptcy Court based its decision was the testimony of Yale Levin, the examiner appointed by the Bankruptcy Court to investigate the creditors’ committee’s allegations. Levin testified that he had investigated the possibility that the $17.6 million paid to GPD had been used in part to acquire Logan; that he had been unable to account for the $17.6 million; that John Z. DeLorean had obtained a Swiss loan of a type normally secured by a certificate of deposit or offsetting balance; and that the proceeds of the Swiss loan had been used to acquire Logan. Levin concluded that there was a “reasonable possibility” that the assets of Logan represented property of the bankruptcy estate, and that he believed it would be productive to continue his investigation.
The Bankruptcy Court also received prior recorded testimony of Christopher Hughes and the deposition of Eric Javits. The Bankruptcy Court held that these statements were admissible against John Z. De-Lorean and DeLorean Manufacturing Co., whose counsel were present when the statements were taken, but not admissible against the other defendants, whose counsel were not present.
Defendants contend that Levin’s testimony was insufficient to support the preliminary injunction, and that the other two statements were not admissible against any defendants.[4] We need not consider the other two statements, however, since it is clear that Levin’s testimony was sufficient to support the Bankruptcy Court’s exercise of its discretion.
Levin’s testimony certainly did not constitute irrefutable proof that the trustee is entitled to relief on the merits. However, “[a] party ... is not required to prove his case in full at a preliminary injunction hearing____” University of Texas v. Cam-enisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Levin did testify that there was a “reasonable possibility” that Logan represented part of the bankruptcy estate and that it would be worthwhile to continue his investigation. His conclusions were supported by specific testimony as to how they were reached, and were accepted by the Bankruptcy Court. In conjunction with the balance of harms to the parties and the public interest, which weighs heavily in the plaintiff’s favor, these conclusions were sufficient to permit the court to exercise its discretion to grant a preliminary injunction.
V. CONCLUSION
The Bankruptcy Court was within its discretion in concluding that the situation warranted preliminary relief necessary to pro *1231 tect the estate while investigation was continued. The preliminary injunction was within the court’s authority and was' in compliance with the Federal Rules of Civil Procedure. Accordingly, the District Court judgment affirming the Bankruptcy Court order is affirmed.

. As amended effective August 1, 1983 (one month after the Bankruptcy Court’s order), Rule 52 expressly provides: "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence____” The advisory committee’s notes concerning the 1983 amendment indicate that ”[n]othing in the prior text of the rule forbids this practice, which is widely utilized by district judges." We find no error in the Bankruptcy Court’s incorporation of its oral findings.

. In USACO Coal Co., 689 F.2d at 98, the Court held that the District Court had not abused its discretion in finding the plaintiffs "likely to succeed” in their claim, but did not mention any particular degree of likelihood required.

. See also Florida Medical Association v. Department of HEW, 601 F.2d 199 (5th Cir.1979); John B. Hull, Inc. v. Waterbury Petroleum Products, 588 F.2d 24 (2d Cir.1978), cert. denied, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979); Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d *1230 Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

. The parties assume that the Federal Rules of Evidence are fully applicable to a hearing on a motion for summary judgment. We express no opinion on this question. But see 11 C. Wright & A. Miller, Federal Practice and Procedure § 2949 (1973) (affidavits may be used to support preliminary injunction; “trial court should be allowed to give even inadmissible evidence some weight").