**In re EAGLE–PICHER INDUSTRIES, INC., Debtor.**

**AMERICAN IMAGING SERVICES, INC. and William A. Opincar, Plaintiffs–Appellants,**

**v.**

**EAGLE–PICHER INDUSTRIES, INC., Defendant–Appellee.**

**No. 91–4108.**

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1992.

Decided May 7, 1992.

Robert A. Goering, Cincinnati, Ohio, (argued and briefed), Pieter J. Tredoux, Ralph Perry Miller, Perry–Miller, Beasley & Hume, Dallas, Tex., for plaintiffs-appellants.

Edmund John Adams, Frost & Jacobs, Cincinnati, Ohio, Stephen Karotkin (argued and briefed), Debra Dandeneau, Weil, Gotshal & Manges, New York City, for defendant-appellee.

Before: KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendants American Imaging Services, Inc., and William A. Opincar (collectively "AISI") appeal the district court's order granting a preliminary injunction to plaintiff Eagle–Picher Industries, Inc. enjoining AISI from proceeding in a separate civil action against David N. Hall and James A. Ralston, officers of Eagle–Picher Industries, Inc. ("Eagle–Picher").

On appeal, the issues raised by defendants are (1) whether the district court erred in affirming the bankruptcy court's order granting Eagle–Picher's motion for a preliminary injunction, (2) whether the dis-

trict court erred in affirming the bankruptcy court's order granting a preliminary injunction which is subject to reconsideration after the expiration of one year, and (3) whether the district court erred in determining that the bankruptcy judge should not have recused himself from presiding over the adversary proceeding commenced by Eagle–Picher to enjoin AISI from proceeding in its civil action. For the reasons that follow, we affirm.

## I.

In 1986, William A. Opincar founded and incorporated American Imaging Services, Inc. ("American Imaging") to design and develop software and programs which enable manually generated engineering drawings to be converted to computer-readable form for use in computer-aided design systems. In 1987, Eagle–Picher became the majority shareholder in American Imaging in order to provide necessary funding. David N. Hall, Senior Vice President and Chief Financial Officer of Eagle–Picher, and James A. Ralston, Eagle–Picher's Vice President and General Counsel, became directors of American Imaging.

On August 27, 1990, AISI filed a complaint in the United States District Court for the Northern District of Texas, Dallas Division, against Eagle–Picher, David N. Hall, and James A. Ralston. In that complaint, AISI asserts causes of action for breach of fiduciary duty to minority stockholders, breach of proprietary information and voting rights agreements, conspiracy to divert corporate assets and usurp corporate opportunities, conspiracy to oust Mr. Opincar from corporate office, and tortious interference with the relationships American Imaging has with its customers.

On January 7, 1991, Eagle–Picher and certain of its subsidiaries (collectively "the Debtors") each filed a voluntary petition with the bankruptcy court for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since filing, each of the Debtors has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Pursuant to section 362 of the Bankruptcy Code, all actions against Eagle–Picher were automatically stayed. On January 22, 1991, AISI filed a motion for relief from the automatic stay of the proceedings against Eagle–Picher. On January 25, 1991, Eagle–Picher commenced an adversary proceeding styled *Eagle–Picher Industries, Inc. v. American Imaging Services, Inc. and William A. Opincar*, Adversary Proceeding No. 1–91–0025, by filing a complaint requesting entry of an order and a preliminary injunction staying the Texas action as against Mr. Hall and Mr. Ralston, the non-debtor co-defendants.

On February 12, 1991, a hearing was held before the bankruptcy court with respect to AISI's motion to lift the automatic stay and Eagle–Picher's motion for a preliminary injunction. Following opening statements and representations by counsel, the bankruptcy court indicated it intended to deny AISI's automatic stay motion and grant Eagle–Picher's motion for a preliminary injunction enjoining AISI from proceeding with the pending action as to the non-debtor co-defendants. The bankruptcy court refused to allow AISI to present evidence in support of its opposition to Eagle–Picher's motion for a preliminary injunction. However, the bankruptcy court did hear AISI's offers of proof regarding all evidence it intended to present. Subsequently, the bankruptcy court denied AISI's motion to lift the automatic stay and on March 7, 1991, entered an order granting Eagle–Picher's motion for a preliminary injunction. The order further provided that American Imaging or Mr. Opincar may file a motion with the bankruptcy court seeking relief from the injunction one year after the date of the order. By agreement of counsel for Eagle–Picher, the injunction order also enjoins Eagle–Picher and its executives from utilizing or disclosing to any third party any source code in Eagle–Picher's possession with respect to the "Lunaseries" product. The order was subsequently amended by a finding that the adversary proceeding was a core proceeding under the Bankruptcy Code.

On May 15, 1991, AISI filed a notice of appeal from the injunction order with the bankruptcy court. At the same time, AISI filed a motion to stay the injunction pending appeal. Eagle–Picher filed its objections to AISI's motion to stay the injunction pending appeal, and, on June 24, 1991, the bankruptcy court entered an order denying the motion to stay pending appeal.

On July 3, 1991, AISI filed a notice of appeal of the order denying the motion to stay pending appeal. After convening an expedited hearing, the district court denied AISI's appeal of the denial of the motion to stay pending appeal. AISI subsequently petitioned this court for a writ of mandamus to review the district court's decision; we denied the petition on October 3, 1991. On October 25, 1991, after conducting a hearing, the district court affirmed the bankruptcy court's order granting Eagle–Picher's motion for a preliminary injunction.

## II.

### A.

■ We review a district court's decision to grant a motion for a preliminary injunction for an abuse of discretion. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir.1989); *In re DeLorean Motor Co., Unsecured Creditors' Committee of DeLorean Motor Co. v. DeLorean*, 755 F.2d 1223, 1228 (6th Cir.1985). The district court's findings of fact underlying its decision to grant a preliminary injunction are reviewed for clear error and its legal conclusions underpinning its decision are reviewed de novo. *N.A.A.C.P.*, 866 F.2d at 166. A legal or factual error may be sufficient to determine that the district court abused its discretion. However, absent such an error, the district court's weighing and balancing of the equities is overruled "only in the rarest of cases." *Id.*

■ 11 U.S.C. § 105(a) ("section 105(a)") of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65. *In re DeLorean*, 755 F.2d at 1228. The four factors which must be considered are (1) the likelihood of the plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest.

### B.

■ AISI argues that the bankruptcy court abused its discretion in failing to allow it to present testimony because factual questions exist regarding the four factors which must be considered when determining whether to grant a preliminary injunction. AISI relies on our decision in *Sec. and Exch. Comm'n v. G. Weeks Sec., Inc.*, 678 F.2d 649, 651 (6th Cir.1982), to support its argument. *Weeks* is distinguishable from this case. In *Weeks*, we held that a district court abused its discretion by issuing an injunction prohibiting the defendants from violating antifraud provisions of the securities laws where the defendants were not allowed to present testimony on their behalf after the Securities and Exchange Commission had presented the testimony of numerous witnesses in the course of six hearings. *Id.* at 651. However, in *Weeks*, we also held that the district court did not abuse its discretion in issuing a second injunction prohibiting the defendants from violating registration provisions of the Securities Act of 1933 because

the District Court had before it adequate documentary evidence upon which to base an informed, albeit *preliminary* conclusion that the standby with pairoff contracts were securities subject to registration. Where the resolution of the questions to be considered in issuing a preliminary injunction turns on legal rather than factual conclusions, the tak-

ing of oral testimony by both sides is not a prerequisite to a fair hearing. *Id.* (emphasis in original). *See also Federal Sav. and Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987) (where no factual disputes existed, district court did not abuse its discretion in granting preliminary injunction on the basis of affidavits and depositions only).

In the present case, the district court determined that the bankruptcy court did not err in prohibiting a full evidentiary hearing "in view of the weight accorded the bankruptcy court's factual determinations and the adequate basis supporting those determinations in the record...." J.A. 13. We agree with the district court's ultimate conclusion on this issue, but for a different reason. After carefully reading AISI's offer of proof in the record, it clearly appears that the offer of proof related primarily to the merits of its civil action in Texas against Hall and Ralston and that the proffer raised no significant questions of fact pertinent to the merits of issuing the preliminary injunction. AISI has subsequently attempted to raise factual questions in its brief; however, these questions were not presented to the bankruptcy court in AISI's offer of proof.

Based on our review of the transcript of the hearing before the bankruptcy judge, there appears to have been no concrete facts in dispute with regard to the issuance of the preliminary injunction. Rather, AISI disputed and continues to dispute the interpretation or conclusions drawn from the facts presented. For example, counsel for AISI stated in AISI's offer of proof that Eagle–Picher has several upper level management employees. This factual statement did not appear to have been disputed. However, AISI's attorney continued that because Eagle–Picher had several upper level management employees, AISI's pursuit of its Texas action against Hall and Ralston would not interfere with Eagle–Picher's reorganization under Chapter 11. Nevertheless, the bankruptcy court drew its own conclusions determining that AISI's civil action would interfere with Eagle–Picher's reorganization efforts. Because AISI did not present significant questions

of disputed facts in its offer of proof, the bankruptcy court did not err in reaching its own conclusions without benefit of a full evidentiary hearing. *Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir.1977) (per curiam) (where nothing in the offer of proof which, if proved, would have altered the result, the district court did not abuse its discretion in granting a preliminary injunction without an evidentiary hearing), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Therefore, we agree with the district court that bankruptcy court did not abuse its discretion in this case. On the contrary, providing AISI a full evidentiary hearing in the bankruptcy court would have resulted in inefficient management of judicial resources and imposed unnecessary expense.

### C.

■ AISI also argues that the bankruptcy court abused its discretion in granting the preliminary injunction. Specifically, AISI argues that Eagle–Picher failed to show by any competent evidence that there was a substantial or strong likelihood that it would prevail in its reorganization efforts. Additionally, AISI argues that Eagle–Picher failed to satisfy the remaining three of the four factors set out in *In re DeLorean.*

■ It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied. *In re DeLorean*, 755 F.2d at 1229. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir.1982). "A fixed legal standard is not the essence of equity jurisprudence...." *Id.* (citations omitted).

AISI attempts to place much emphasis on the first factor where the plaintiff must demonstrate a strong or substantial likelihood of success on the merits. AISI argues that Eagle–Picher has failed to present any evidence whatsoever that it

may prevail in its reorganization efforts. AISI is correct in arguing that the bankruptcy court focused on the last three factors. However, the bankruptcy court determined that irreparable harm would result to Eagle–Picher's reorganization efforts if it were denied the injunction, that AISI would suffer no "serious prejudice" as a result of the injunction, and that the creditors' interests would be served by the injunction. In view of the bankruptcy court's protection of Eagle–Picher's reorganization efforts, it is implicit in its decision that it believed Eagle–Picher had some realistic possibility of successfully reorganizing under Chapter 11. The matter of Eagle–Picher's bankruptcy petition had been before the bankruptcy court for over a month when the bankruptcy court entertained Eagle–Picher's motion for a preliminary injunction. The bankruptcy court was therefore thoroughly familiar with Eagle–Picher's progress in its reorganization plan.

The bankruptcy court's primary emphasis on the last three factors for granting a preliminary injunction was not error, especially when considering that the source of its authority to grant such an injunction emanates from section 105(a) whose purpose is to assist the court in carrying out the provisions of the Bankruptcy Code, one of which is to oversee the reorganization of a debtor's business. In addition, as we stated in *Friendship Materials*, a court may, in its discretion, grant a preliminary injunction

> even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued.

*Id.* at 105. *See also In re DeLorean Motor Co.,* 755 F.2d at 1229 ("the degree of likelihood of success required may depend on the strength of the other factors.").

■ AISI also argues that substantial factual issues exist concerning the last three factors. In regard to the second factor, the district court's opinion set forth

in some detail the significant injury which Eagle–Picher would suffer if the injunction were not granted.

> ... [P]roceeding with the Texas action will needlessly divert key employees from the debtor's reorganization effort. Also, the debtor's estate will be unnecessarily diminished unless an injunction is granted. Because Eagle–Picher's insurance policy covering its executives does not cover defense costs, does not reimburse Eagle–Picher for the costs of litigation, and because a reservation of rights has already been made by Eagle–Picher's insurer, Eagle–Picher and those to whom Eagle–Picher is in debt will be immediately harmed if the Texas action is permitted to proceed.
>
> In addition, because the same issues have been asserted in the Texas action against the debtor and Mr. Hall and Mr. Ralston, and because the interests of the debtor and Mr. Hall and Mr. Ralston are intertwined, the debtor must actively participate in the Texas action in order to protect its interests and avoid potential risks. Therefore, proceeding with the Texas action will have adverse effects on Eagle–Picher and negate the purpose of the automatic stay provided to the chapter 11 debtor.

J.A. 10–11.

In *A.H. Robins, Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the Fourth Circuit considered some of these same factors in affirming a decision to uphold a preliminary injunction in favor of a nondebtor co-defendant. The A.H. Robins Company, Inc. ("Robins"), maker of the Dalkon Shield intrauterine contraceptive device, was beset with a flood of actions from plaintiffs seeking damages allegedly sustained by use of the Dalkon Shield. Robins subsequently filed for bankruptcy under Chapter 11. The nondebtor co-defendants were entitled to indemnification by Robins and were also insured under Robins' insurance policy. The court held that, in light of indemnity and insurance arrangements, irreparable harm would result in the form of diminished resources available to creditors if claim-

ants were allowed to proceed with their actions against the nondebtors. *Id.* at 1007–08. Therefore, the court upheld the injunction. *Id.* at 1008.

As a prelude to its ultimate decision, the Fourth Circuit stated that while "unusual circumstances" are required to stay proceedings against nonbankrupt co-defendants, a sufficiently "unusual circumstance" arises where

> ... it would seem, ... there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*Id.* at 999. Similarly, as previously illustrated, just such an identity exists between Eagle–Picher and Hall and Ralston. Thus, the lower courts did not err in determining that without the preliminary injunction, Eagle–Picher would suffer irreparable harm.

In regard to the third factor, the bankruptcy court found, and the district court agreed, that granting Eagle–Picher's motion for a preliminary injunction would not seriously prejudice AISI where the bankruptcy court's order included a provision enjoining Hall and Ralston from utilizing or disclosing to a third party the source code for the "Lunaseries" product. Nevertheless, AISI argues in its brief, without providing specifics, that the provision in the bankruptcy court's order does not provide adequate protection to prevent Hall and Ralston from misappropriating AISI's proprietary and trade secret technology for Hall and Ralston's own economic benefit and use, to the severe and irreparable detriment of AISI.

However, at oral argument, counsel for AISI stated that in order for AISI to be adequately protected by the injunction, the injunction must prohibit any "direct or indirect dissemination of any trade secrets, proprietary software, technology or records of AISI." Thereafter, in its oral argument, counsel for defendant Eagle–Picher stated that the enlargement of the injunction's scope by this language was acceptable to the defendant. Therefore, in light of the agreement between parties regarding this issue, it is appropriate that the injunction as it applies to defendant Eagle–Picher be amended to include these more expansive prohibitions.

In regard to the fourth factor, the bankruptcy court expressed concern for the effects AISI's action would have on Eagle–Picher's creditors. The district court correctly interpreted this as the bankruptcy court's determination that the preliminary injunction was in the public interest. On the other hand, AISI, relying on our decision in *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983), argues that the preliminary injunction is against the public interest. In *Johns–Manville Sales Corp.*, two co-defendants named in thousands of asbestos cases pending in state and federal forums throughout the nation, petitioned the bankruptcy court pursuant to 11 U.S.C. § 362 for a stay of the proceedings pending against them after two of their co-defendants, Unarco and Johns–Manville Sales Corp., filed for bankruptcy. When Unarco and Johns–Manville Sales Corp. filed petitions for reorganization under Chapter 11 of the Bankruptcy Code, all proceedings against them were automatically stayed pursuant to 11 U.S.C. § 362. This court affirmed the lower court's decision not to extend the stay to Unarco's and Johns–Manville's solvent co-defendants. *Id.* at 1197. In doing so, we stated

> [n]othing in the legislative history counsels that the automatic stay should be invoked in the manner which would advance the interests of some third party, such as the debtor's co-defendants, rather than the debtor or its creditors. This court concurs with the district court's conclusion that "it would distort congressional purpose to hold that a third party solvent co-defendant should be shielded

against his creditors by a device intended for the protection of the insolvent debtor" and creditors thereof.

*Id.* at 1197. The present case is clearly distinguishable from *Johns–Manville Sales Corp.* In *Johns–Manville Sales Corp.*, the solvent co-defendant companies were separate and distinct entities from the debtors. The common thread between the non-debtors and debtors was simply that each company was named as a defendant in asbestos cases. In the present case and as previously explained, the individual defendants, Hall and Ralston, are inextricably intertwined with the debtor, Eagle–Picher. Thus, it is for the protection of Eagle–Picher's numerous *creditors,* not for Hall and Ralston, that AISI is properly prohibited from proceeding with its action against Hall and Ralston, and this prohibition is not a distortion of Congressional purpose. Therefore, the lower courts did not err in determining that it was in the public interest to issue the preliminary injunction.

### D.

AISI next argues that the district court erred in determining that the bankruptcy court abused its discretion in ordering the preliminary injunction to be in effect for a period of one year. This argument is meritless in view of the preceding discussion regarding the purpose and benefit of the preliminary injunction.

### E.

■ AISI also argues that the preliminary injunction must be vacated because the district court failed to make any specific findings of fact pursuant to Fed.Rules Civ.Proc.Rule 52 regarding the four factors important in determining whether to grant a preliminary injunction. This argument is also meritless. The transcript of the hearing, which the bankruptcy court designated in its order as its findings of fact, reveals that the bankruptcy court made oral findings of fact roughly corresponding to all factors except the first one concerning the plaintiff's success on the merits. However, the first factor was not dispositive of the bankruptcy court's decision to issue the preliminary injunction. Where a factor is not dispositive, Rule 52 does not require a specific finding. *In re DeLorean,* 755 F.2d at 1228.

### F.

■ Finally, AISI argues that the bankruptcy judge should have recused himself from ruling on Eagle–Picher's application for a preliminary injunction because his familiarity with the bankruptcy case somehow ruined his impartiality and prejudiced him in his handling of the adversarial portion of the proceedings, *i.e.,* Eagle–Picher's application for injunction. AISI did not move for recusal in the bankruptcy court and first raised the issue in its appeal to the district court. The district court refused to consider the issue because it was not first raised in the bankruptcy court.

AISI now argues that it was unnecessary for it to raise this issue in the bankruptcy court in order to preserve it. In support of its argument, it cites *In re Manoa Finance Co., Inc.,* 781 F.2d 1370, 1373 (9th Cir.1986) (per curiam), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987), in which the Ninth Circuit held that motions to recuse under 28 U.S.C. § 455 were unnecessary to preserve the recusal issue for appeal. In *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986), however, the same circuit held "that a motion for recusal filed weeks after the conclusion of a trial is presumptively untimely absent a showing of good cause for its tardiness." If the Ninth Circuit would bar consideration of a late-filed motion for recusal because of its tardiness, it would seem that the court would refuse to consider the issue where no motion for recusal had *ever* been filed. That is the logical extension of the holding in *Studley.*

In *Palila v. Hawaii Dep't of Land & Natural Resources,* 852 F.2d 1106, 1110 n. 7 (9th Cir.1988), the Ninth Circuit referred to *Manoa* and admitted that, "[u]nder 28 U.S.C. § 455, it is unsettled in this circuit whether a claim must be timely." Thus, *Manoa* is uncertain authority even within the Ninth Circuit. More importantly, it has

never been adopted in this circuit in which the general rule holds that appellate courts are not to address issues not raised for the first time in the trial court. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243–45 (6th Cir.1991); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990); *Bhd. of Locomotive Eng'rs. v. I.C.C.*, 909 F.2d 909, 912–13 (6th Cir.1990). Thus, like the district court, we decline to consider the issue of recusal because it was not raised in the bankruptcy court. However, were we to consider the issue, we would hold that it is meritless.

### III.

For the reasons stated, the district court's order affirming the bankruptcy court's order is AFFIRMED. It is further ORDERED that the district court is directed to direct the bankruptcy court to amend its order of March 7, 1991, to provide that defendant Eagle–Picher and its officers, agents, and employees are further enjoined from directly or indirectly disseminating any trade secrets, proprietary software, technology or records of AISI.